Our third case on today's calendar is United States v. Gilbert Manning, 2034-16, and we are ready to hear from Mr. Godina. Thank you, Your Honor. Your Honor, it may please the Court. In this appeal, the parties filed a joint motion to waive oral argument and submit the matter on the briefs. This Court denied the motion and ordered appellant to file a reply brief responding to the government's newly raised and unrelated assertion that the Southern District of Illinois Administrative Order 265 and the District Court's appointment of counsel is unlawful. We've done so and prepared to argue it, but not at the expense of overlooking Mr. Manning's of the District Court's rejection of his compassionate relief claim. And very quickly, I'd like you to say one or two things. Our brief provides the basis for relief. We submit that his serious medical condition of pre-diabetes provides extraordinary and compelling reasons for a reduction, and that other factors such as the fact that he has served a large portion of his sentence, the crime was nonviolent, and he has done well in the BOP completing over 30 programs. He's not a danger to the community he was returned to, and in fact, the danger is staying in the community that he's in now. So I think all those factors support relief relative to the compassion relief matter. So can I just say a quick word about that, which is obviously what inspired the appeal to begin with, not this side issue about the scope of the statute. You're running up against what's an increasingly large line of cases that regard this as the kind of decision a district court makes that's reviewable only for abuse of discretion. And it's not to say that you haven't presented good arguments for your client, Mr. Manning, but the district court saw arguments on the other side and came down that way. And so there's a real scope of review question for this court. My response, I guess, Your Honor, would be that in this instance, the court seemed to not list prediabetes as one of their conditions, as it would if it was diabetes. And I think that that particular distinction is a loose one, and it's not sufficient. And I would suggest that that would qualify as a abuse of discretion. Okay. Right. I mean, obviously, there are many, many of these compassionate release cases. As to the question whether the statute permits the district court to compensate somebody in these compassionate release situations, we appreciate your briefing all of this. We appreciate the efforts of both sides to raise this issue here. What I'm interested in, first and foremost, is whether the government in this particular instance at least waived this point. And I'm a little—I'll just throw into the hopper, too—I'm a little concerned about whether the record in this case is filled out enough for us to know whether there's a problem. Who's being compensated? Who isn't being compensated? What are the rules? Well, Your Honor, relative to the waiver issue itself, we obviously submit that the government can't waive that issue by failing to raise it at the district court level. They first do so in a brief. In that brief, they admit that they may ordinarily have been deemed to waive the issue. So what would the consequences be? Suppose we found—I'm just sort of thinking out loud right now—but suppose we were to find that the statute doesn't permit compensation in any way, shape, or form, either indirectly through the Federal Public Defender's Office or in a more direct fashion for panel attorneys under the CJA. What are the consequences? Does this procedure just have to start all over again with Mr. Manning proceeding pro se, or—how does this intersect with Mr. Manning's interests? He's not the one who was paying anybody. I absolutely agree, Your Honor. I don't think to much of an extent, if any, that it does intersect with Mr. Manning's interest in hearing the CJA, the Administrative Order portion of things, in this particular case because it's essentially unrelated to his situation. I think— Would we need to have facts found to see if any payment from the district court went to a panel attorney? And if so, tax Mr. Manning with that amount of money? Or that seems a little harsh if he didn't know he was undertaking that, but maybe. I'm just very curious, really, right now about what is the remedy and how does it get implemented inside the confines of a person's petition for compassionate release. I'm not sure how I can answer that, Your Honor. I was a bit curious about that myself. I don't know to what extent, you know, whether if the court rules or the government is to terminate this. I don't get paid on this case. It's not really my major concern, but the effect on what's going to happen to these cases and the amount of volume that the CJA attorneys have taken would certainly affect the administration of justice. And I think that's also an interest that the court ought to consider because of the volume of cases that have been handed out and volume of cases that are filed. And there's apparently no end in sight in that regard that the administration of justice is going to be affected quite negatively. It's going to slow things down and it's going to get results if these people have to represent themselves that are less in the interest of justice. No, I agree with that, but then the question comes up and it has come up in the briefing whether the right way to present this concern is through a petition to the Judicial Council of the Circuit, which is the body that approves local rules, it approves jury plans, it approves all sorts of local administrative procedures and one could imagine the Southern District of Illinois' Administrative Order 265 is that kind of thing, the CJA plans, so inserting this into a concrete criminal case is a bit awkward, but I'll obviously be asking your colleague about that as well. If you would like to save any time for rebuttal. I would simply like to say that I agree with you that I think there are other avenues to and you named one of them and I think, you know, whether a civil case needed to be filed, if the governor could seek potentially injunctive relief or declaratory judgment, other matters, other ways that this matter could be taken care of that would be more appropriate. All right, thank you, Ben. I wanted to interrupt just for a moment. We're talking about compassionate release and it's been denied, so he has, what, four more years? Yes. Yeah, and that's the result. I'm not sure there's anything in addition to that is what happens afterward. He's going to be there four more years or he could do something else or get another, but as it is, that seems to be all that's before us, whether or not he was denied compassionate release. Well, Your Honor, obviously, he was denied compassionate release and I believe that should be the issue. What simple issue in this instance, whether or not that was proper and not whether we should be discussing so much the CJA situation in this particular case, the McCarvey case that the government filed for their supplemental briefing just a week or so ago would probably be more likely, more appropriate of a case to hear this because that's been briefed and argued in the district court. It's not yet been resolved, but I would anticipate that that may come up to the appellate court. It seems to me that would be a more appropriate manner for the government to raise or try to raise that issue. All right, thank you, Mr. Godina. Mr. Cutchin, I'll be very interested to hear what you have to say. Good morning, Your Honors. May it please the court. My name is Jim Cutchin and I represent the United States in this appeal. Obviously, I think the court's questions have centered more on the representation issue, so I'll start with that, but except to say in case I run out of time that I think the court was correct that this is a matter of review for abuse of discretion on the denial of the compassionate release motion and Judge Rosenstengel exercised her discretion appropriately for all the reasons that we say in our brief. On the representation issue, taking the issue that Judge Wood raised first about waiver, the government certainly didn't try to hide the fact that in this particular case, it did not make a motion or raise the issue below. First, and ordinarily, might begin to waive it. That's a uniquely bad case in which to address this issue. It's a very serious issue. I don't, for a minute, blame anybody for putting it up front, but as your supplemental authority that just reached us a couple days ago in McCarvey, if there's a written order denying appointment of paid counsel, people appeal things like that. There's a concrete order that can be reviewed. You can see what Judge Dugan, of course, elaborated on his reasons for doing that, and there are also the other avenues that I mentioned, and in particular, the judicial counsel, given its role as the reviewing body for things like Administrative Order 265. I'm just not sure, given your failure to raise it and also Mr. Manning, the posture of Mr. Manning's case, that this is the right case in which to explore this. I think we'd have to have a remand. We'd have to have lots of facts being found. We'd have to figure out money. We'd have to figure out whether Mr. Manning was willing to pay the amount that could be attributed to this representation. I can't imagine pulling the rug out from under him on his compassionate release appeal for a reason that the government never even mentioned that might not even be a problem if nobody was giving unpaid, I'm sorry, nobody was inappropriately being paid for representation. Your Honor, I certainly don't dispute the fact that there are potentially better vehicles. That better vehicle in the McCarvey case wasn't in existence when we, well, the case was, but the issue and the ruling of Judge Dugan wasn't in existence when we filed our brief. To my knowledge, this is the first brief that we, that first appeal that we've had come before the court where under Administrative Order 265, where CJA panel attorney was appointed. So, that's why the government agreed. Are there other cases, to your knowledge, around the country that are bringing this issue up? Your Honor, I looked. I could not find any. Certainly, there are cases where the Public Defender's Office, which is a related but separate issue, have been appointed. I couldn't find any. I'm not saying there aren't any. I could not find any where the courts have taken, that have laws similar to ours, or a case similar to Foster and his precedent, where they've appointed CJA counsel. Mr. Kutchin, have there been steps taken to address this with the Judicial Council? Have there been any administrative or non-legal steps taken outside of the court system? Well, Your Honor, not with the Judicial Council. As we related in our brief, before Administrative Order 265 was enacted, it was circulated to the government and to the Public Defender's Office for comment. And the government raised the exact same concerns that it's raised in its briefing here with the District Court. But as far as going to a reviewing body outside of an appeal or a legal case, no. I don't think that the case that they cite, the Xing Shan case, actually stands for the proposition that such questions must be raised. In fact, the court merely noted that was an avenue that went on to address the question of the propriety of the standing order in that case, within that case. Again, I'm not at all disagreeing with Judge Wood that there may be better vehicles. But I don't think that the kind of factual finding that the court has intimated might be required would be required, because I think it's a purely legal issue. The legal issue is quite clear from the order that the Administrative Order 265 sets in motion a process where CJA attorneys perform work for which they expect to be paid. But, you know, here's the analogous situation. It's actually quite common in proceedings in the District Court for a defendant to file a motion with the court and ask that counsel be recruited to represent him. I mean, it happens in countless cases that I can think of. And the District Courts occasionally grant those motions, and occasionally they deny them. And since it's an adversary proceeding, if it got granted, I suppose one can imagine cases where the government will come in and say it shouldn't have been granted. You know, we have information that this individual is not indigent, or we have information that the case is frivolous, or, you know, whatever. You say what reason seems appropriate to you. But we're lacking, given the government's failure to raise this to begin with, we're lacking that kind of adversarial presentation that if we are going to do this through the vehicle of court proceedings as opposed to administrative proceedings, it seems to me the lack of adversarial presentation is a real problem. Breara, I'm not sure that the kind of facts that you're talking about would be present in a case. For example, in the McCarvey case that we cited, if let's assume that the motion to a point had been granted and the government's objection denied, there would be no follow-on factual development of whether someone was paid or not. I mean, that would not exist in the record at the moment that the issue was decided by the court and the counsel was appointed and then we moved on to the merits of the contract. Well, what if it were a CJA panel lawyer and the government just jumped to the conclusion that this person was going to be paid, but in fact, the private arrangement between the client and the CJA panel lawyer was that it was going to be pro bono representation. Surely the government is not objecting to pro bono representation on the part of a member of the bar. No, we certainly made that clear in our briefing or not. Well, Your Honor, and I think this gets into another question you asked is what would be the effect. I think the Criminal Justice Act speaks to that. It would take a separate action by the government, a suit basically to recover, and I don't think anyone under these circumstances is contemplating such a suit. But it's not something, you know, the repayment of any money would not be something that would be resolved in this case. It would take a separate action, as I understand it. I mean, and you should bring that action if you think that's what the law requires you to do. Well, that certainly after the representation has concluded, I don't think that there's a requirement that the government not raise the issue when the motion for appointment has been made. I don't see the two as exclusive, or I don't see one being exclusive of the other. It's really too bad. I mean, I'm not actually 100% sure that this is the way one has to read the statute, but let's assume for the moment that it is. The government is urging a procedure that is going to tie the hands of the district courts who are, as you know, being inundated with these motions. And instead of having the clarity that counsel can bring to a motion like that, perhaps even suggesting to some people that theirs is not a good candidate for this. Instead, they're just going to get this flood of pro se stuff, and the government is going to be stuck with it too. So you really are asking for something that will terribly hamper the judiciary. Well, Your Honor, it's not that the government is asking for it. I mean, Foster says what it says. It says there's no permission under the Criminal Justice Act to pay Criminal Justice Act attorneys. Which requires you to read the statute. I'm suggesting that maybe Foster isn't the last word. It requires you to read 3006 capital A in a way that understands ancillary matters appropriate to the proceedings, not to include these 3582 motions. That's what Foster said. I'm not disagreeing with that. But Foster was decided at a time before we had the experience that we've been having of late. And it's not the craziest stretch to think that compassionate release is an ancillary matter appropriate to the proceedings. I don't know. We'll see. Well, Your Honor, I, you know, I don't have the luxury of questioning Foster the way that the panel might. But I think it would require the overruling of Foster to say something different. Probably, yeah. And I just, I just don't see that there's really been any good reason under the, under the rules that this court applies to overruling precedent. Just because something would be helpful, helpful or would bring greater efficacy to the situation, doesn't transform it into a congressional grant of authority to do that. The place to take that up with is obviously with Congress. Again, Foster says what it says. The government has raised the issue. And I, and I believe, I don't think waiver applies at all, Your Honor. And the reason I don't is I think this is an ongoing harm. This really impacts on the court's ability to control the conduct of business before it. Administrative Order 265 led to a procedure where new expenses are being obtained or being incurred before this court. So I certainly think there's ample reason for the court to reach the issue. But I certainly understand the court believes that there are better factual vehicles to do it. I see my time's expired. All right, thank you very much. Appreciate your argument. Anything further, Mr. Godino? Nothing, Your Honor, unless there's something you want to hear from me. No, thank you. I see no questions. So thank you to both counsel and the court will take this case under advisement.